IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

REYBOLD VENTURE GROUP, )
XI-A LLC, et al., )
                                              )
       Plaintiffs, )
                                              )
   v. ) Civ. No. 11-1297-SLR
                                              )
DELAWARE DEPARTMENT OF )
EDUCATION, )
                                              )
       Defendant. )

Jeffrey M. Weiner, Esquire of Jeffrey M. Weiner, Esq, Wilmington, Delaware. Counsel for Plaintiffs.

Joseph C. Handlon, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware and John B. Hindman, Deputy Attorney General, Delaware Department of Justice, Dover, Delaware. Counsel for Defendant.

**MEMORANDUM OPINION**

Dated: May 30, 2013
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

On December 28, 2011, plaintiffs Reybold Venture Group XI-A LLC, Reybold Venture Group XI-B LLC, Reybold Venture Group XI-C LLC, Reybold Venture Group XI-D LLC, Reybold Venture Group XI-E LLC, and Reybold Venture Group XI-F LLC (collectively, "plaintiffs") filed a complaint alleging that the Voluntary School Assessment Act ("VSA"), 9 Del. C. § 2661, is discriminatory and/or unconstitutional. (D.I. 1) Defendant Delaware Department of Education ("defendant") answered the complaint on February 7, 2012. (D.I. 4) Currently before the court are defendant's motion for summary judgment (D.I. 21) and plaintiffs' motion for partial summary judgment (D.I. 22).

## II. BACKGROUND

Plaintiffs are each Delaware Limited Liability Companies and hold the title interest to the Meridian Crossing subdivision ("Meridian") originally designed to contain 738 residential units.[1] (D.I. 1 at ¶¶ 1, 4) Defendant is an Agency of the State of Delaware. (D.I. 1 at ¶ 2)

The VSA was enacted on July 30, 1999. It provides[2] that, prior to recording a major subdivision plan in New Castle County, an applicant must either submit a certification to the Department of Land Use that the appropriate school district has adequate capacity or pledge to pay a Voluntary School Assessment ("VSA payment"). See 9 Del. C. § 2661. The VSA excludes developments restricted to individuals 55

---

[1] 99 of the units (22 apartments and 77 attached homes) are restricted for individuals 55 years of age or older. (D.I. 1 at ¶4)

[2] Subject to exceptions not relevant here.

years of age or older and low income housing.[3] 9 Del. C. § 2661(c)(2). The VSA payment is calculated on a per-unit basis, based on the average cost of construction for a public school. 14 Del C. § 103(c)(3). It is capped at 5% of the total cost of the residential unit. *Id.*

On June 9, 2003, plaintiffs entered into an agreement with defendant providing that plaintiffs would make VSA payments in the amount of $3,261 for each qualifying residential unit built over the next five years. For any subsequent five year period, the amount of the VSA payment would be recalculated based on then current construction cost data. (D.I. 23 at 3-4); *see* 14 Del. C. § 103(c). Plaintiffs made the VSA payments as needed through September 23, 2011. (D.I. 28 at 16) As of November 21, 2011, defendant recalculated the amount per the agreement as $6,088. (*Id.*)

## III. STANDARD OF REVIEW

Not only may the lack of subject matter jurisdiction be raised at any time, it cannot be waived and the court is obliged to address the issue on its own motion. *See Moodie v. Fed. Reserve Bank of NY*, 58 F.3d 879, 882 (2d Cir. 1995). "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action," without reaching the merits of the remaining arguments. Fed. R. Civ. P. 12(h)(3); *Moodie*, 58 F.3d at 882. Once jurisdiction is challenged, the party asserting subject matter jurisdiction has the burden of proving its existence. *See Carpet Group Int'l v. Oriental Rug Importers Ass'n, Inc.*,

---

[3]The act defines low income housing as financed by a loan or mortgage that is insured or held by the Secretary of HUD or the Delaware State Housing Authority or which is developed by a nonprofit corporation certified under 26 U.S.C. § 501(c)(3).

2

227 F.3d 62, 69 (3d Cir. 2000). Under Rule 12(b)(1), the court's jurisdiction may be challenged either facially (based on the legal sufficiency of the claim) or factually (based on the sufficiency of jurisdictional fact). *See* 2 *James W. Moore, Moore's Federal Practice* § 12.30[4] (3d ed. 1997). Under a facial challenge to jurisdiction, the court must accept as true the allegations contained in the complaint. *See id.* Dismissal for a facial challenge to jurisdiction is "proper only when the claim 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or . . . is wholly insubstantial and frivolous.'" *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1408-09 (3d Cir. 1991) (quoting *Bell v. Hood*, 327 U.S. 678, 682 (1946)).

Under a factual attack, however, the court is not "confine[d] to allegations in the . . . complaint, but [can] consider affidavits, depositions, and testimony to resolve factual issues bearing on jurisdiction." *Gotha v. United States*, 115 F.3d 176, 179 (3d Cir. 1997); *see also Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891-92 (3d Cir. 1977). In such a situation, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Carpet Group*, 227 F.3d at 69 (quoting *Mortensen*, 549 F.2d at 891). Although the court should determine subject matter jurisdiction at the outset of a case, "the truth of jurisdictional allegations need not always be determined with finality at the threshold of litigation." 2 Moore § 12.30[1]. Rather, a party may first establish jurisdiction "by means of a nonfrivolous assertion of jurisdictional elements and any litigation of a contested subject-matter jurisdictional fact issue occurs in comparatively summary procedure before a judge alone (as distinct

3

from litigation of the same fact issue as an element of the cause of action, if the claim survives the jurisdictional objection)." *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 537-38 (1995) (citations omitted).

## IV. DISCUSSION

### A. Tax Injunction Act

As defendant has challenged the court's subject matter jurisdiction in its motion for summary judgment, the court begins by assessing the effect of the Tax Injunction Act, 28 U.S.C. § 1341 (the "Act"). The Act prohibits federal courts from enjoining "the assessment, levy or collection of any tax under state law" where state law provides a "plain, speedy and efficient" remedy. *Kerns v. Dukes*, 153 F.3d 96, 101 (3d Cir. 1998); *Raskauskas v. Town of Bethany Beach*, 555 F. Supp. 783, 786 (D. Del 1983). Generally, a district court is precluded from issuing an injunction or granting declaratory relief from the collection of state taxes. *Raskauskas*, 555 F. Supp. at 787. Application of the Act is not discretionary; "rather, the Act creates a 'non-waivable jurisdictional bar that absolutely precludes federal courts from assessing the validity of state or local taxation schemes.'" *Kerns v. Dukes*, 944 F. Supp. 1214, 1219 (D. Del 1996), *aff'd*, 153 F.3d 96, 101 (3d Cir. 1998). Moreover, the principles of comity restrict federal courts from interfering in this area recognized as a compelling state interest. *See Fair Assessment in Real Estate Assoc. v. McNary*, 454 U.S. 100, 102-103 (1981); *Lang v. Remington*, 1999 WL 33220547 at 3-4 (D. Del. 1999). For example, federal courts may not entertain suits brought under 42 U.S.C. § 1983 for damages in connection with state tax suits. *Fair Assessment*, 454 U.S. at 111.

4

Here, plaintiffs seek a declaration that the VSA is unenforceable, an order to enjoin defendant from collecting VSA payments, and a refund of all of their VSA payments. (D.I. 1 at 4-5 ¶¶ 1-3) Focusing on the concerns addressed by the Act, plaintiffs appear to argue that the fiscal consequences to the State of Delaware are secondary to their constitutional concerns. Further, plaintiffs assert that a change in the application of the VSA - from a per-unit basis to another assessment measure - would likely have no fiscal consequences. (D.I. 28 at 11-12); *Harvey & Harvey, Inc. v. Delaware Solid Waste Authority*, 600 F. Supp. 1369 (D. Del. 1985) (finding that cases with outcomes having a secondary effect on the financial affairs of a state are not always precluded by the Act).

Federal courts have analyzed the relevant case law on a continuum to determine if they must decline jurisdiction. *Kerns*, 944 F. Supp. at 1220. At one end are cases involving regularly assessed taxes, such as property taxes, where federal courts will always lack jurisdiction. *Id.* Relief is also precluded in cases involving the manner in which a statute is administered. *Id.* (citing *Kimmey v. H.A. Berkheimer, Inc.*, 376 F. Supp. 49, 54 (E.D. Pa.1974) (dismissing civil rights action challenging local tax collection law where plaintiffs' challenge was to administration of law as opposed to validity of actual tax), *aff'd*, 511 F.2d 1394 (3d Cir. 1975)). Federal courts have declined jurisdiction as well in "cases in which the government has expended or proposes to expend funds on projects, and the plaintiff has been hurt, or will imminently be hurt, by reason of a governmental statute or ordinance creating an assessment or lien," even when the plaintiffs have presented the court with a constitutional challenge.

5

*Kerns*, 944 F. Supp. at 1220. At the opposite end of the continuum "are cases in which the governing body has not and is not proposing to spend any funds, but through allegedly unlawful governmental action seeks to increase its revenue by subjecting its citizens to further tax levies." *Id.* at 1221.

The facts of this case fall squarely within the scope of the Act's jurisdictional bar. The VSA is a one-time impact fee imposed on all new home construction to ensure adequate funding for the local schools that may have to accommodate the new residents. Those least likely to use public education[4] and developers of low income housing are exempt. Plaintiffs paid their VSA fees on their Meridian property for years.[5]

Clearly the VSA is a regularly assessed tax addressing a legitimate project, that of public education. And, indeed, plaintiffs do not object to the assessment itself, only to the way it is administered, i.e., on a per-unit basis rather than on an assessed value or per-square foot basis. Although plaintiffs have asserted a constitutional challenge to the administration of the VSA,[6] plaintiffs have not asserted the absence of a "plain, speedy and efficient remedy" in Delaware state courts. Looking at the continuum of cases, it is apparent that the Act mandates dismissal of plaintiffs' claims, in order to

---

[4]Those aged 55 and older.

[5]More specifically, VSA payments were made by plaintiffs until the assessment doubled and the constitutionality of the VSA became apparent to them.

[6]Based on two theories: Although the VSA fees are not passed directly on to purchasers, the fees (1) somehow discourage developers like plaintiffs from building housing for "minorities and the poor," again despite the specific exemption in the VSA for low income housing; and (2) discriminate against minorities and the poor by unfairly burdening them, when viewed as a percentage of income, and preventing them from entering the real estate market.

avoid substantial federal interference on the fiscal integrity of the state and local governments involved.

### B. Standing

Assuming for purposes of this proceeding that plaintiffs' suit is not barred by the Act, the question of standing remains. The doctrine of standing incorporates both a constitutional and a prudential element. *See Pitt News v. Fisher*, 215 F.3d 354, 359 (3d Cir. 2000). Constitutional standing is a threshold issue that must be addressed before examining issues of prudential standing and statutory interpretation. *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998). Article III standing requires: "(1) an injury-in-fact . . . ; (2) a causal connection between the injury and the conduct complained of; and (3) that it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Winer Family Trust v. Queen*, 503 F.3d 319, 325 (3d Cir. 2007). To have standing, "the 'injury in fact' test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (quoting *Sierra Club v. Morton*, 405 U.S. 734, 734-735 (1972)).

Generally, to have prudential standing, a party "must assert his own legal rights and interests." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). Prudential standing embraces the following principles: "(1) the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties; (2) even when the plaintiff has alleged redressable injury sufficient to meet the requirements of Article III, the federal courts will not adjudicate abstract questions of

wide public significance which amount to generalized grievances pervasively shared and most appropriately addressed in the representative branches; and (3) the plaintiff's complaint must fall within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.*, 140 F.3d 478, 485 (3d Cir. 1998) (internal quotation marks and citations omitted).

The Third Circuit determines the appropriateness of third-party standing with a three-part test. *Nasir v. Morgan*, 350 F.3d 366, 376 (3d Cir. 2003) (citations omitted). "To successfully assert third-party standing: (1) the plaintiff must suffer injury; (2) the plaintiff and the third party must have a 'close relationship'; and (3) the third party must face some obstacles that prevent it from pursuing its own claims." *Id.*

Plaintiffs first assert standing based on "common law property rights," alleging that the VSA inflicts financial damage upon plaintiffs and diminishes their ability to sell their properties at market rates. (D.I. 28 at 13) Since plaintiffs have not proffered any showing that the VSA affected their property sales, there is no evidence of an injury or causation as required for standing.

Plaintiffs next assert third-party standing on behalf of minorities or the poor by virtue of their unique position to witness the discriminatory effects of the VSA. (D.I. 28 at 13) As indicated above, plaintiffs make the VSA payments and do not pass them on to their purchasers. (D.I. 23 at 17, ex. A at 37-38) Plaintiffs have shown no evidence that minorities have purchased a home in Meridian or were prevented from purchasing a home in Meridian by virtue of the VSA. (D.I. 31 at 10) Plaintiffs offer no evidence of the close relationship needed for third-party standing and do not sufficiently show that

third-parties could not pursue their own claims. The court concludes that plaintiffs have not shown injury to minorities or other "would-be purchasers," nor have they shown the type of close relationship sufficient to confer third-party standing.

## V. STATUTE OF LIMITATIONS

Although 42 U.S.C. § 1983 does not contain a statute of limitations period, the Supreme Court has determined that the applicable limitations period should be the period determined by each state for personal injury actions. *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 919 (3d Cir. 1991) (citing *Wilson v. Garcia*, 471 U.S. 261, 266 (1985). The statute of limitations for personal injuries in Delaware is two years. *See* 10 Del. C. § 8119; *see also McDowell v. Del. State Police*, 88 F.3d 188, 190 (3d Cir. 1996). The limitations period for purposes of § 1983 claims begins to run "from the time when the plaintiff knows or has reason to know of the injury which is the basis of the section 1983 action." *Genty*, 937 F.2d at 919.

Plaintiffs entered into an agreement with defendant regarding the VSA on June 9, 2003 and subsequently made VSA payments. One such payment was made on October 29, 2009.[7] As of November 21, 2011, the recalculated VSA payment amount was $6,088. Plaintiffs argue "that assuming *arguendo* that the originally-enacted per-unit fee was nominal, the doubling of the fee clearly resulted in denial of equal protection." (D.I. 28 at 16-17) Plaintiffs do not dispute the two-year statute of limitations and agree that a "challenge to a law's constitutionality must be brought within the limitations period after the plaintiff is injured by the law in whatever form that injury

---

[7]This is the earliest payment documented by the parties.

9

might take." (Id. at 16) Plaintiffs offer no explanation for why the statute of limitations would not run from the day of the agreement regarding VSA payments (June 9, 2003), or at the latest from the making of the first of such payments (October 29, 2009). Instead, plaintiffs appear to assert that the "unconstitutionality" began when the VSA payment increased on November 21, 2011.[8] As plaintiffs' claims are based on equal protection and assert that the VSA unequally burdens minorities and the poor, the court concludes that the statute of limitations began running at least when plaintiffs made their first payment (October 29, 2009),[9] making the instant lawsuit (filed December 28, 2011) untimely.

## V. CONCLUSION

For the foregoing reasons, defendant's motion (D.I. 21) is granted in part and denied in part as moot. Plaintiffs' action is dismissed for lack of subject matter jurisdiction based on the Tax Injunction Act and considerations of comity, as well as for lack of standing. Plaintiffs' motion (D.I. 22) for partial summary judgment as to the constitutionality of the VSA is denied as moot.

---

[8] Although plaintiffs focus on the doubling of the VSA payment, it is worth noting that the agreement held the amount of the payment constant for five years. Therefore, the VSA payment doubling occurred over an eight and a half year period, presumably commensurate with construction cost increases.

[9] If there were earlier VSA payments made under the agreement, the statute of limitations would have run from that time.

10